## Daniel Aylesworth v. Delia Herrington, et. al.

*Partition Fences: When duty to keep up: Damages: Cattle.* The purpose of the act regulating partition fences — *L. 1861, p. 294* — was to compel every person to discharge his duty in regard to the same, at the peril of such losses as he might suffer from his neglect, by the beasts of those persons to whom the duty was owing. This duty is created only for the protection of adjoining proprietors, and before the duty can become fixed, so as to require him to keep in repair any particular portion of such partition fence, it must appear, *First*, that the adjoining proprietor improves his land; and *second*, that either by consent or by the action of the fence viewers, a portion of the partition fence between them has been assigned to him to keep in repair. Adjoining proprietors may dispense, if they see fit, with partition fences, altogether, and if such fences are erected, no particular portion thereof belongs to either party to be kept in repair by him, until in some legal mode the partition is made. Until that is done, it will be presumed that the parties choose to rely upon their common law liability for damages by their beasts.

*Fences: Adjoining owners.* It appears that the cattle of defendants' went on to plaintiff's land from the adjoining premises of another. The court charged the jury that to maintain the action, the partition fences. if any, between plaintiff's premises, and those adjoining must be of lawful height, or if the fence be divided, then the part belonging to the injured party should be of lawful height.

    *Held*, that admitting the cattle to have been rightfully on the adjoining premises, and to have got over the defective fence, the charge would still be erroneous, since it assumes that in case the partition fence between the plaintiff's and the adjoining premises was not apportioned between them, the mere fact that such fence was insufficient will preclude a recovery; whereas, under that state of facts it would be evident that the plaintiff was under no greater obligation to repair than the adjoining owner himself, and the defendants could claim no protection, inasmuch as such adjoining owner could have claimed none himself, had the damage been done by his own beasts.

*Charge of Court: Successive trespasses.* In an action of trespass for damages for several alleged trespasses by cattle of defendant, the jury rendered a verdict for the plaintiff; but for a less sum than he claimed. On exceptions by the plaintiff, to the charge of the court below, the defendant urged that as the jury found for the plaintiff, they must have found the fence through which the cattle entered sufficient, and that plaintiff had suffered nothing for which he could bring error. *Held*, that as several successive trespasses were complained of the court could not say that the jury did not find the fence sufficient at one time and insufficient at another.

*Heard October 16th. Decided October 20th.*

Error to Washtenaw Circuit.

This was an action of trespass brought to recover damages alleged to have been committed by the cattle of defendant upon plaintiff's premises.

Judgment was rendered in favor of plaintiff.

The facts are stated in the opinion.

*S. E. Engle,* for plaintiff in error.

At common law no person is bound to fence against the beast of another. The owners of beasts are liable for any damage done by them on the lands of another, and can have no defense to an action for such damages, unless by virtue of some statute, or by prescription or agreement. In this case the only defense claimed is the *Act 179, Laws of 1861,* repealing the act of 1847.

But that act can not be so broadly construed as to support the charge in this case, applying it to a stranger, not adjoining the lands trespassed upon; for the language is very clear and explicit in stating what fence must be of lawful height before an action can be sustained, and it is first, a "partition" fence; second, "belonging to such person" (the plaintiff) "or by him to be kept in repair."

Now, as there is no such fence at common law, and no prescription or agreement is claimed, we have only to look into the statute to see what fences a person is bound to keep in repair, and under what circumstances; and the *14th Chap. Comp. L.* contains all there is on the subject.

The mere fact that the partition fence enclosing the plaintiff's land, in whole or in part, is defective, is not enough to bar his action; the defendant who seeks to defend himself under the statute, must also show that such fence "belonged to" the plaintiff, or was "by him to be kept in repair;" but that was not done in this case. It should have been done by showing Knickerbocker's lands improved, enclosed and occupied, and a division of the fence, and that the defective portion "belonged to" Aylesworth "to repair."

The spirit and intent of this whole fence law is simply this: *Chap. 14, Comp. L.* enables one of two adjoining occupants to impose on the other, in a certain manner, the obligation of maintaining a certain portion of the fence between them; and when he has taken the proper steps for

this purpose then the act of 1861 enables him (not a third person) to defend himself in an action by the other party who has failed to maintain his portion of the fence. It does not apply to a stranger defendant not occupying adjoining lands, for there can be no partition fence between him and the plaintiff; nor has he the right to compel plaintiff to build any fence whatever.

But will it be claimed that when the provisions of *Chap. 14* have been complied with, and the circumstances are such that an adjoining occupant might set up this defense, then a third party may also set up the same defense to an action against himself.

If so, then the defendant's liability would depend upon the uncertain arrangements of two persons, made without reference to himself, for their own convenience, subject to constant change, and in which he has no legal interest, and over which he has no control. Such a construction would be absurd. The above reasoning is sustained by all the authorities where the statutes were similar to ours. *Johnson v. Wing, 3 Mich. 163,* is sound law. The Act of 1847 did not apply to partition fences. Said *Chap. 14* was in force as now, and also *Comp. L.* § *5049,* which, however, did not defeat the action, because there was no. fence nor division of the line, and assignment to each a portion.— *6 Mass. 70; 4 Met. 589; 4 N. H. 36; 7 Id. 518.*

*Palmer & Kinne,* for defendants in error.

The common law of England, touching the obligations and liabilities of the owners of enclosed lands, so far as the question of fences is concerned, has been entirely supplanted in this state by the positive provisions of our statute.—*3 Kent, 583.*

Prior to the act of 1847 (*Sess. L. p. 181*), no action for injuries upon enclosed lands could be maintained, unless the divisional fences answered the requirements of the

statute.   If a party failed to enclose his field, he waived his right of action.   The statutes of Connecticut and Vermont are identical with our statutes of 1846, and they were so construed in the cases of *Studwell v. Rich, 14 Conn. 292*, and *Mocney v. Maynard, 1 Vert. 470*, wherein the law, as laid down in the case of *Rust v. Low, 6 Mass. 99*, was denied.   The law of 1847 we regard as simply a declaratory statute, and intended to abolish all supposed distinction between exterior and divisional fences.   It is true that this court, in the case of *Johnson v. Wing, 3 Mich. 163*, construed that statute as applying only to exterior fences, but that decision, if not erroneous, is certainly anomalous.

The *Act 179, Sess. L. of 1861*, seems to remove the obligation to maintain exterior fences, but renders the existence of the statutory partition fence an absolute condition precedent to an action at law.

Under this broad and unqualified statutory enactment, the owner of enclosed lands can maintain no action against any tenant, whether adjoining or otherwise, unless, in the first instance, his partition fences are such as the law demands.   He must satisfy the requirements of the statute before he can invoke the aid of the courts.   Hence there is no error in the charge or refusal of the Circuit Judge.

The *onus probandi* is upon the plaintiff to show that his partition fence is of lawful height and description.

In the absence of evidence, this court will presume that the cattle of defendants, if in the field of Mr. Knickerbocker, were in there rightfully.

2.   The bill of exceptions is fatally defective in that, not sufficient evidence is set forth, to enable this court to determine the propriety of the instructions given to the jury, or the materiality of the refusals to charge as requested; nor in what manner, if any, they could affect the result of this case.   There is even no evidence to show where the cattle broke the enclosure of the plaintiff.

AYLESWORTH v. HERRINGTON ET AL.

On exceptions, every part of the charge or refusal of the court must be presumed to be correct and to be warranted by the evidence, so far as the bill does not show to the contrary.—*10 Mich. 54.*

3. By giving a general verdict in favor of plaintiff, the jury found the partition fences to be of lawful height and in good repair, and the plaintiff therefore has not been injured by the charge of the court, if such charge were erroneous.

The charge went to the whole cause of action and could in nowise affect the damages, except by defeating the action.

This court will not correct errors which work no injury to the party suing out the writ.—*3 Mich. 55; 12 Id. 427; 13 Id. 70.*

COOLEY CH. J.

Aylesworth sued the defendants in trespass, and, on the trial, gave evidence tending to show that, on several occasions in the years 1866 and 1867, the cattle of the said defendants broke and entered the close of the plaintiff, and injured and destroyed, among other things, a quantity of standing corn, and a quantity of corn fodder. The plaintiff also gave evidence tending to show that the close or premises of the said defendants, by them occupied, did not, on any side, lie adjacent to or join the close of the plaintiff, on which the said trespasses were committed. Thereupon the defendants put in evidence, tending to show that the partition fence, between the plaintiff's close and the adjoining close of one Mr. Knickerbocker, was not four and a half feet high, nor in good repair, and that it formed a part of the enclosure of one of the corn fields in which said trespasses were committed.

Upon this evidence the Circuit Judge charged the jury that, in order to maintain this action, the partition fences, if any, inclosing the field in whole or in part, must be of

lawful height; or, if the fence be divided, then the part belonging to the plaintiff must be of lawful height; and he refused to charge that, if the close of the plaintiff did not adjoin the close of the defendants, the plaintiff was not bound to keep up the partition fences between him and the adjoining occupants, in order to entitle him to maintain an action for the trespasses in question.

Under this charge, the jury rendered a verdict for the plaintiff for less than he conceives he is entitled to, and he has therefore brought error. The question in the case is one of statutory construction, and arises upon *Act 179, of 1861,* which provides that "No person shall be entitled to recover any sum of money, in any action at law, for damages done upon lands by any beast or beasts, unless the partition fences, by which such lands are wholly or in part enclosed, and belonging to such person, or by him to be kept in repair, shall be of the same height and description as is required by the provisions of *Comp. L. § 605*"; that is to say, a fence four feet and a half high and in good repair, or something which the proper fence viewers shall determine to be equivalent thereto. The view of the Circuit Judge appears to be that under this statute every owner of land is bound, at his peril, to see to it that all the partition fences between himself and all the adjoining proprietors are kept of the lawful height and in the proper condition; or, in case such fences have been apportioned between himself and such proprietors, for the purposes of repair, then that his own portion is thus kept up, and that failing in this duty, he can have no remedy for damages against any one whose beasts shall commit injury upon his land, whether it be an adjoining proprietor or any other person.

We are all of opinion that the Circuit Judge has erred in his construction of this statute. The purpose of its provisions was to compel every person to discharge his duty in regard to partition fences at the peril of such losses as he

might suffer from the depredations committed in consequence of his neglect by the beasts of those persons to whom the duty was owing.. What that duty is will appear from other statutory provisions.

*Comp. L.* § *606,* provides that the respective occupants of lands inclosed with fences shall keep up and maintain partition fences between their own and the next adjoining inclosures, so long as both parties continue to improve the same.

The next section provides that in case any party shall neglect to repair or rebuild any partition fence, which of right he ought to maintain, the aggrieved party may complain to the fence viewers, who, after due notice to each party, shall proceed to examine the same; and if they shall determine that the fence is insufficient, they shall signify the same in writing to the delinquent occupant of the land, and direct him to. repair or rebuild the same within such time as they shall judge reasonable, and if such fence shall not be repaired or rebuilt accordingly, it shall be lawful for the complainant to repair or rebuild the same; and by §*608* he is given a remedy to recover double the costs of such rebuilding or repair.

*Section 609* provides that when any controversy shall arise about the right of the respective occupants in partition fences, or their obligation to maintain the same, either party may apply to the fence viewers, who are authorized to apportion to each his share thereof, and to direct the time within which each party shall erect or repair his share of the fence; which assignment, being recorded in the township clerk's office, shall be binding upon the parties and all succeeding occupants of the lands, and they shall be obliged always thereafter to maintain their respective portions of said fence.

*Section 610* provides that in case any party shall neglect or refuse to erect and maintain the part of any fence assigned to him by the fence viewers, the same may be

erected and maintained by the aggrieved party, who shall be entitled to recover double the value thereof.

It is very evident, under these statutory provisions that the duty of any person to keep up a partition fence, is one created by the statute in favor and for the protection of the adjoining proprietor, and that before that duty can become fixed so as to require him to keep in repair any particular portion of such partition fence, it must appear: *First*, that the adjoining proprietor improves his land, and, *second*, that either by consent or by the action of the fence viewers, a portion of the partition fence between them has been assigned to him to keep in repair. Adjoining proprietors are at liberty, if they see fit, to dispense with partition fences altogether, and if such fences are erected, no particular portion thereof belongs to either to be kept in repair by him, until in some legal mode the partition is made. Until one or the other has taken the necessary steps to effectuate such division, it is to be presumed he is satisfied to trust his property to such securities as the rules of the common law can give him, and to respond in damages under those rules if his beasts commit injury on the lands of other persons.

In the present case the plaintiff does not appear to have been under any obligation to the defendants to keep up any fence whatever. Their lands did not adjoin, and consequently there could be no partition fence between them. The plaintiff was *prima facie* entitled to recover, and the defendants, to excuse themselves under the statute, must bring the case within it. But if there could be no partition fence between them, it is plain the statute could not apply. It is suggested that the cattle of defendants went upon the plaintiff's land from the adjoining premises of Knickerbocker, and that they must be presumed to have been rightfully upon such adjoining premises; but the answer to this is: *First*, That the case is not put to the jury on any such basis; and *Second*, That admitting them

to have been rightfully there, and to have got over the defective fence, the charge would still be erroneous, inasmuch as it assumes that in case the partition fence between the plaintiff and Knickerbocker was not apportioned between them, the mere fact that such fence was insufficient will preclude a recovery; whereas, under that state of facts, it would be evident that the plaintiff was under no greater obligation to repair than Knickerbocker himself, and that the defendants could claim no protection under the law, inasmuch as Knickerbocker, in whose rights they would stand, could have claimed none himself had the damage been done by his own beasts.

It is said, however, that admitting the charge to be erroneous, the judgment should still be affirmed, inasmuch as the jury returned a verdict for the plaintiff, and must therefore have found the fence sufficient. Had the injury complained of been a single trespass only, there would be force to this position. But successive trespasses were complained of, and we cannot say that the jury did not find the fence sufficient at some of the times, and insufficient at others, and consequently render a verdict for less than the plaintiff was justly entitled to. The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.